**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**

<table>
<tr><td>CHAMBERS OF<br>PAUL W. GRIMM<br>CHIEF UNITED STATES MAGISTRATE JUDGE</td><td>101 W. LOMBARD STREET<br>BALTIMORE, MARYLAND 21201<br>(410) 962-4560<br>(410) 962-3630 FAX</td></tr>
</table>

January 11, 2012

William James Nicoll, Esq.
Jenkins, Block & Assocs., P.C.
1040 Park Avenue
Baltimore, MD 21201

Alex S. Gordon, AUSA
36 South Charles Street
4th Floor
Baltimore, MD  21201

    **Re: Duwayne Bordley v. Michael J. Astrue, Commissioner of Social Security, PWG-10-797**

Dear Counsel:

    Pending before this Court, by the parties' consent, are Cross-Motions for Summary Judgment concerning the Commissioner's decision denying Mr. Duwayne Bordley's claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). (ECF No. 10,16,22).  This Court must uphold the Commissioner's decision if it is supported by substantial evidence and if proper legal standards were employed. 42 U.S.C. § 405(g); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).  A hearing is unnecessary.  Local Rule 105.6.  For the reasons that follow, this Court **DENIES** the Plaintiff's Motion and **GRANTS** the Commissioner's Motion.

    Mr. Bordley (sometimes referred to as "Claimant") filed applications for SSI and DIB in November 2007, alleging that he became disabled on November 1, 2005, due to depression, arthritis in his feet, knees, back, and hands as well as diabetes mellitus. (Tr. 134, 139, 161).  After his claims were denied initially and on reconsideration, a hearing was held before an Administrative Law Judge ("ALJ"), the Honorable Robert W. Young. (Tr. 21-50, 99-108).  In a decision dated September 30, 2009, the ALJ found that although Mr. Bordley's chronic back pain and organic mental disorder were "severe impairments", they did not meet or equal any listed impairment.

The ALJ also found that Mr. Bordley retained the residual functional capacity ("RFC") to perform a limited range of light work[1] and that based on his RFC and after receiving testimony from a vocational expert, ("VE"), he was not precluded from performing his past relevant work ("PRW") as a presser. Accordingly, the ALJ found he was not disabled within the meaning of the Act. (Tr. 16- 18).  On March 5, 2010, the Appeals Council denied Mr. Bordley's request for review, making the ALJ's decision the final, reviewable decision of the Commissioner.(Tr. 1-3).  This appeal followed.

     The Commissioner's decision must be upheld if supported by substantial evidence which is more than a scintilla, but less than a preponderance, and sufficient to support a conclusion in a reasonable mind. *See* 42 U.S.C. §405(g) (1998); *see also King v. Califano*, 599 F.2d 597 (4th  Cir. 1979); *Teague v. Califano*, 560 F.2d 615 (4th Cir. 1977); *Laws v. Celebrezze*, 368 F.2d 640 (4th  Cir. 1966). This Court may not weigh conflicting evidence, determine credibility, or substitute its judgment for the Commissioner's. *See Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Although deferential, this standard of review does not require acceptance of a determination by the Commissioner which applies an improper standard, or misapplies the law. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). Following its review this Court may affirm, modify or reverse the Commissioner, with or without a remand. *See* 42 U.S.C.§405(g); *Melkonyan v. Sullivan*, 501 U.S. 89 (1991). Claimant presents several arguments in support of his contention that the ALJ's decision is not supported by substantial evidence.  For the reasons that follow, I disagree and AFFIRM the ALJ's decision.

     Claimant's first argument is that the ALJ erred by affording "significant weight" to the opinions of the State Agency physicians, Dr. Boateng and Dr. Hakkrinen, who found Claimant capable of performing unskilled light work. *See* Plaintiff's Memorandum, pp. 3-4.  SSR 96-6p provides that an ALJ may afford great weight to non-examining state agency

---

[1] The ALJ found that Claimant retained the following RFC: he could never climb ladders ropes, or scaffolds, but he could occasionally climb ramps and stairs, balance stoop, kneel, crouch or crawl. The ALJ also found that Claimant had nonexertional limitations which included marked limitations in dealing with detailed instructions, moderate limitations in the ability maintain attention and concentration, and moderate limitations in the ability to set realistic goals and to make plans with others such that the Claimant was limited to routine, repetitive, unskilled tasks. (Tr. 15).

physicians' opinions.[2]  The ALJ adequately discussed the reasons for affording Dr. Boateng and Dr. Hakkrinen's opinions considerable weight, and why he was according the assessment of Claimant's treating physician, Dr. Sivaraman, little weight.(Tr. 17, 244, 312-315). For example, although Mr. Bordley alleged an inability to bend due to pain, Dr. Boateng noted that upon examining him he had normal range of motion in his lumbar and cervical spine, hips, and the rest of his joints. (Tr. 231-234).  The ALJ also noted this was consistent with office notes from Jai Medical Center, in which his treating physicians stated that Mr. Bordley's musculoskeletal abilities were within normal limits ("WNL"). (Tr. 16, 317, 321). When viewed in its entirety, as is required, the evidence in the record supports the ALJ's determination to afford considerable weight to the DDS physicians' assessments.

Claimant also argues that the ALJ's finding that he could perform his PRW was not supported by the vocational expert's ("VE") testimony.  The Commissioner argues that the ALJ's determination that Mr. Bordley was capable of performing his PRW as a presser is substantially supported by, and consistent with, the vocational information and the VE's testimony.

After review of the record and the ALJ's decision, I am not persuaded by Claimant's argument.  Rather I find that the ALJ's findings about the requirements of Claimant's PRW as a presser are consistent with the testimony and the vocational information.  SSR 82-62, in relevant part, provides:

> ...[D]etermination of the claimant's ability to do PRW requires a careful appraisal of (1) the individual's statements as to which past work requirements can no longer be met and the reason(s) for his or her inability to meet those requirements; (2) medical evidence establishing how the impairment limits ability to meet the physical and mental requirements of the work; and (3) in some cases, supplementary or corroborative information from other sources such as employers, the Dictionary of Occupational Titles, etc., on the requirements of the work as generally performed in the economy.

(1982 WL 31386, *3) (S.S.A)).

---

[2] SSR 96-6p, in relevant part, states: In appropriate circumstances, opinions from State agency medical and psychological consultants and other program physicians and psychologists may be entitled to greater weight than the opinions of treating or examining sources. SSR 96-6P, 1996 WL 374180 *2-3(S.S.A.)

At the hearing, the ALJ specifically asked Mr. Bordley questions about the demands of his job.  For example, the ALJ asked what type of work he did and where he worked. (Tr. 27-31).  Mr. Bordley also completed forms detailing the type of work he performed, how much lifting was required, and what his duties included. (Tr. 162). Mr. Bordley argues that the ALJ's reliance on the VE testimony and the Dictionary of Occupational Titles ("DOT") job title of "presser" was improper because the VE did not identify a DOT number, and that the job of "presser" in the DOT code 363.682-014 has a strength SVP number of 3 not 2 as the VE stated.

However, as noted by the Commissioner in his Memorandum, the occupation of hand presser as defined in DOT 363.684-018[3] actually has an SVP of 2.  In sum, I find the ALJ's discussion and his subsequent findings regarding Mr. Bordley's PRW are consistent with the VE's testimony and in accordance with the applicable rulings the ALJ's finding that he could perform his PRW was appropriate and is supported by substantial evidence.

Therefore, I am **DENYING** Plaintiff's Motion for Summary Judgment, and **GRANTING** Defendant's Motion for Summary Judgment.  A separate Order shall issue.

DATED: 1/11/12

```
            ___/s/_____
            Paul W. Grimm
```

---

[3] CODE: 363.684-018
TITLE(s): PRESSER, HAND (any industry) alternate titles: finisher, hand; ironer, hand

Presses articles, such as drapes, knit goods, millinery parts, parachutes, garments, and slip covers, or delicate textiles, such as lace, synthetics, and silks to remove wrinkles, flatten seams, and give shape to article, using hand iron: Places article in position on ironing board or worktable. Smooths and shapes fabric prior to pressing. Sprays water over fabric to soften fibers when not using steam iron. Adjusts temperature of iron, according to type of fabric, and uses covering cloths to prevent scorching or to avoid sheen on delicate fabrics. Pushes and pulls iron over surface of article, according to type of fabric. Fits odd-shaped pieces which cannot be pressed flat over puff iron. May pin, fold, and hang article after pressing. May be designated according to article or part pressed as Coat Ironer, Hand (garment); Lining Presser (garment; laundry & rel.); Seam Presser (garment); Vest Presser (garment); or according to type of cloth pressed as Cotton Presser (garment); Silk Presser (garment) I or part pressed as: Flatwork Finisher, Hand (laundry & rel.); Piece Presser (garment); Pocket Presser (garment); Underpresser, Hand (garment); Waist Presser (garment); Wearing-Apparel Finisher, Hand (laundry & rel.).
GOE: 06.04.35 STRENGTH: L GED: R2 M1 L1 SVP: 2 DLU: 80

4

United States Magistrate Judge

5